UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MOHAMMAD IDREES,                                          :

               Plaintiff,                   :            04 Civ. 2197 (LAK) (GWG)

   -v.-                                            :            REPORT AND
                                             RECOMMENDATION
CITY OF NEW YORK,                                          :

              Defendant.                   :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Mohammad Idrees brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et. seq., as well as the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, alleging that the City of New York subjected him to a hostile work environment, discriminated against him on the basis of his race, national origin, religion, and age, and retaliated against him for engaging in protected activities. The City of New York has moved for summary judgment. For the following reasons, the motion should be granted.

I.     BACKGROUND

    A.    Procedural History

Idrees, who is now represented by counsel, filed suit pro se in this Court on March 19, 2004. See Complaint, filed Mar. 19, 2004 (Docket # 1). On September 3, 2004, the City of New York filed a motion to dismiss the complaint on statute of limitations grounds insofar as it alleged claims occurring before April 13, 2002. See Motion to Dismiss, filed Sept. 3, 2004 (Docket # 10). The Court granted the City's motion, dismissing Idrees' claims based on events that occurred before April 13, 2002, as well as his tort claim under state law. See Order, filed May 26, 2005 (Docket # 14); Report and Recommendation, filed May 3, 2005 (Docket # 13).

Idrees then filed an Amended Complaint, see Amended Complaint, filed June 14, 2005 (Docket # 15) ("Am. Compl."), alleging: (1) that he has been denied promotional opportunities because of his race, religion, national origin, and age, id. ¶¶ 1-6, 10-15; (2) that the City of New York retaliated against him by denying him further promotional opportunities after he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in 2003, id. ¶¶ 7-15; and (3) that Idrees was subjected to a hostile work environment, id. ¶¶ 16-18.

The City of New York filed the instant motion for summary judgment on August 1, 2008. See Amended Notice of Motion, filed August 1, 2008 (Docket # 46) (amending Docket # 42); Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, filed July 31, 2008 (Docket # 43) ("Def. Mem."); Declaration of Kami Z. Barker, filed July 31, 2008 (Docket # 44) (as amended by Substituted Exhibit B, filed Nov. 25, 2008 (Docket # 55)) ("Barker Decl."). Idrees filed papers in opposition to the motion. See Plaintiff's Memorandum of Law in Support of the Dismissal of Defendant's Summary Judgment Motion, filed Oct. 2, 2008 (Docket # 50) ("Pl. Mem."). The City of New York has submitted a reply. See Defendant's Reply Memorandum of Law in Further Support of its Motion for Summary Judgment, filed Nov. 21, 2008 (Docket # 54).

B.    Evidence Presented on the Summary Judgment Motion

1.    Compliance with Local Civil Rule 56.1

The City of New York included in its summary judgment papers a statement of undisputed facts as required by Local Civ. R. 56.1(a). See Defendant's Statement Pursuant to Local Civil Rule 56.1, filed July 31, 2008 (Docket # 45) ("Def. 56.1"). Every paragraph contains citations to admissible evidence in the record, including documentary evidence,

admissions as reflected in the Amended Complaint, deposition testimony, or affidavits, as required by Local Civ. R. 56.1. <u>See</u> Local Civ. R. 56.1(d).

While Idrees submitted a Rule 56.1 counter-statement, that counter-statement fails to comply with Local Civ. R. 56.1(b) requirement that such a counterstatement "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party." <u>See</u> Plaintiff's Response Pursuant to Local Civil Rule 56.1, filed Oct. 2, 2008 (Docket # 49) ("Pl. 56.1"). More significantly, few of the assertions in plaintiff's Rule 56.1 counter-statement are "followed by citation to evidence which would be admissible," as required by Local Civ. R. 56.1(d). <u>See</u> Pl. 56.1. Instead, Idrees cites to evidence not in the record, <u>see</u>, <u>e.g.</u>, <u>id.</u> ¶ 4; and cites repeatedly to his unverified Amended Complaint as a source, <u>see id.</u> ¶¶ 1, 2, 11-15. Idrees apparently believes that he is not required to cite to admissible evidence in opposition to the motion for summary judgment. <u>See</u> Pl. Mem. at 8 ("The non-moving party is not required to present evidence negating elements of the other party's case."). However, Fed. R. Civ. P. 56(e)(2) specifically provides to the contrary:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). Thus, where, as here, "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." <u>Nebraska v. Wyoming</u>, 507 U.S. 584, 590 (1993) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)) (internal quotation marks omitted) (alteration in original). In other words, "[a] defendant moving for summary

judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case."  Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  Moreover, "reliance upon conclusory statements or mere allegations is not sufficient to defeat a summary judgment motion."  Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002) (citing Ying Jing Gan v. City of New York, 996 F.2d 522, 532-33 (2d Cir. 1993)).

Pursuant to the provisions of Local Civ. R. 56.1(c), the material facts set forth in the Rule 56.1 statement submitted by the City of New York "will be deemed to be admitted for purposes of the motion" to the extent they are not contradicted by admissible evidence submitted by Idrees.  See, e.g., Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 223 (S.D.N.Y. 2003) (material facts set forth in defendant's Rule 56.1 statement "are uncontested and may be accepted as true" where plaintiff's Rule 56.1 counter-statement was "deficient" because it consisted solely of "blanket denials" and was "not supported by citation to any evidence") (citations omitted), aff'd, 99 Fed. Appx. 259 (2d Cir. 2004).

Idrees has pointed to some admissible evidence in support of his case.  For example, he submitted the sworn affidavits of two co-workers with his Amended Complaint.  He also cites to his own deposition testimony, portions of which were submitted by defendants.  These items are considered by the Court to the extent they are based on the "personal knowledge" of the affiant or deponent.  See Fed. R. Evid. 602; Fed. R. Civ. P. 56(e)(1).

2.     Evidence in the Record Favorable to Idrees

For purposes of describing the evidence in this case, we view the facts in the light most favorable to Idrees and resolve all factual ambiguities in his favor.  See, e.g., Havey v.

Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008).  The Court has considered all the evidence marshaled by Idrees in his memorandum of law, Pl. Mem. at 3-6, and has also considered other evidence in the record that is favorable to Idrees, even though it was not cited in his memorandum.  We have omitted from consideration hearsay material.  E.g., Declaration of Helene Starr ("Starr Decl.") (annexed to Am. Compl.), ¶¶ 6-8.

Idrees was born in Pakistan in 1946 and is now a U.S. citizen.  See Deposition of Mohammad Idrees ("Pl. Dep.") (annexed as Ex. B to Barker Decl.), at 13.  He earned Bachelor's and Master's degrees in Chemistry from the Government College of Lahore, Pakistan, and a Master's in Public Administration from Columbia University.  See Resume of Mohammad Idrees ("Resume") (annexed as Ex. G to Barker Decl.).

Idrees began working at the Parks Department of the City of New York in 1985.  See Resume; Performance Evaluations ("Perf. Eval.") (annexed as Ex. F to Barker Decl.).  He started in the Engineering Audit Office, see Resume; Pl. Dep. 34.  In May 1994, he was involved in an altercation with a subordinate, who filed a complaint with the Commission of Human Rights of the City of New York, alleging discrimination and harassment based on religion.  See Determination and Order After Investigation, dated Dec. 13, 2002 (annexed as Ex. CC to Barker Decl.).  Idrees was later exonerated of those charges.  Id.  On May 1, 1995, he was transferred to the Management Services Division, where he was demoted to a "clerk or a laborer" with the title of "purchasing liaison."  Pl. Dep. 34.  In his new position in the Management Services Division, Idrees was supervised by Mary Pazan.  Id.

Idrees asserts that Pazan treated him badly.  Pl. Mem. at 5, 10.  Incidents involving such treatment, all of which take place between 1995 and 1999, consist of: (1) shouting at Idrees

because he did not "pick up and deliver heavy boxes of paper," Affidavit of Cheryl McBean (annexed to Am. Compl.), ¶ 5(A); (2) making Idrees clean her area of empty water bottles, id. ¶ 5(B); (3) yelling at Idrees because he had told her secretary to wait one hour for a new diary, id. ¶ 5(C); (4) sending her assistant to make Idrees do filing that was not his responsibility, id. ¶ 5(D); (5) commenting that she would fire the person who had purchased new lamp shades for the office, before Idrees told her that he had purchased the lamp shades, id. ¶ 5(E); and (6) telling Jeff Broder to "kick Mohammad's ass out," id. ¶ 7; Pl. Dep. 108, 111.  Idrees also asserts that Pazan gave him a poor review in 2005, which Idrees attributed to discrimination and retaliation. Pl. Dep. 111-12, 119, 124.

In January 2001, Idrees' supervisor, Mel Fox, threatened him with a stapler while saying "you guys are nasty people."  Pl. Dep. 110-11.  Although Fox was fined and sent for rehabilitation, he remained Idrees' supervisor after that incident.  Id.

In October 2001, Idrees passed the Associate Staff Analyst ("ASA") civil service exam. Pl. Dep. 36; Declaration of David Terhune ("Terhune Decl.") (annexed as Ex. J to Barker Decl.), ¶ 7.  Idrees was interviewed for the ASA position, and scored a 3.0 out of 5.0 on his interview. See Associate Staff Analyst Interviews ("ASA Interviews") (annexed as Ex. H to Barker Decl.); Terhune Decl. ¶¶ 8, 16.  Of the 15 potential candidates who were interviewed, four scored at 3.0; no one received a lower score.  See ASA Interviews.  Of the 15 candidates who passed the ASA exam, the only two who were not promoted were Idrees and Robert Bleiberg.  Terhune Decl. ¶¶ 7, 16.  Idrees and Bleiberg were the only candidates who scored 3.0 and did not receive a supervisor recommendation.  ASA Interviews; Terhune Decl. ¶¶ 16, 17.  The supervisor who declined to provide a recommendation for Idrees was Mary Pazan.  Terhune Decl. ¶ 15.  The

6

only candidate to obtain the promotion without a supervisor recommendation was Kathleen Nutt, who scored a 3.5 on her interview.  See ASA Interviews.   In April 2002, Idrees was denied a promotion to the ASA position.  Terhune Decl. ¶ 7; see also Charge of Discrimination ("EEOC Charge") (annexed as Ex. C to Barker Decl.).

Idrees filed a complaint with the Department's Equal Employment Office ("Parks EEO") on May 16, 2002.  Terhune Decl. ¶ 18; Parks EEO Complaint (annexed as Ex. N to Barker Decl.).  Idrees alleged that he had been denied promotional opportunities because of his "color, race, age, religion, gender, and national origin and for . . . opposing unlawful employment practices."  Parks EEO Complaint.  The Parks EEO did not find evidence of discrimination, but did conclude that Idrees had "unjustly been denied promotional opportunities," noting that Idrees had been denied the opportunity to apply to several positions because the positions were not posted.  Investigation Report (annexed as Ex. L to Barker Decl.).  The Parks EEO further noted that

> [t]he investigation failed to reveal justification for not promoting Mr. Idrees to the ASA position.  Mr. Idrees' evaluations are more than adequate, he has no disciplinary history, and is spoken highly of by his immediate supervisor.  Ms. Pazan failed to present credible evidence to justify why she did not recommend Mr. Idrees for the promotion.

Id.  As a result of the Parks EEO investigation, Idrees was promoted to ASA effective December 22, 2002.  Pl. Dep. 36; Terhune Decl. ¶ 18.  Idrees was given back pay to April 2002.  Pl. Dep. 36, 55; Terhune Decl. ¶ 19.

Idrees then filed a complaint with the EEOC on February 7, 2003 alleging that he had not been promoted during the period from 1992 through 2003 as a result of discrimination based on race, color, religion, national origin, and age, as well as retaliation.  EEOC Charge; Pl. Dep. 97-

7

99.  On December 31, 2003 the EEOC informed Idrees that most of his allegations were time-barred and issued a Right to Sue Notice.  See Pl. Dep. 113-14; Dismissal and Notice of Rights (annexed as Ex. D to Barker Decl.).

In February 2003, the Parks Department posted the availability of seven positions as Deputy Capital Team Leader ("DCTL").  Terhune Decl. ¶ 20.  Idrees submitted an application and was interviewed for those positions.  Pl. Dep. 57-58; Terhune Decl. ¶¶ 23-24.  One member of the interview panel noted that Idrees was "very dressed down" for his interview.  See Interview Matrix (annexed as Ex. Q to Barker Decl.); Terhune Decl. ¶ 30.  Idrees scored 16.3 out of 30 possible points on his interview, which was the fourth lowest score out of 51 candidates.  Terhune Decl. ¶ 32.  The seven individuals who obtained the DCTL positions scored between 22.8 and 25.7 at their interviews.  Terhune Decl. ¶¶ 35-41.  Additionally, each of the seven individuals who obtained the positions had a degree in either Engineering or Landscape Architecture.  Terhune Decl. ¶ 42.  On June 17, 2003, Idrees received a letter from Nancy Barthold informing him that he had not received the promotion.  Pl. Dep. 59; Terhune Decl. ¶ 33.  Idrees asserts that the seven individuals who received these promotions were younger than he was, Pl. Dep. 64, were not Muslim, Pl. Dep. 72, and were "natives," meaning that "they were born here," Pl. Dep. 75.  Idrees bases this assertion upon the appearance and names of the persons promoted.  Pl. Dep. 63-64, 72-75.

In January 2003, Idrees applied for the position of Deputy Agency Chief Contracting Officer.  Pl. Dep. 88.  He was interviewed for the position, id., but the position was never filled, id.; Terhune Decl. ¶ 65.  Instead, the responsibilities of that position (without the title) were assigned to Maurice Dobson.  Terhune Decl. ¶ 65.

8

In February 2003, the Parks Department posted the availability of the position of Deputy Chief of Management Services.  Terhune Decl. ¶ 59.  Idrees did not apply for this position, Pl. Dep. 89; Terhune Decl. ¶ 60, "because it would have been a joke," Pl. Dep. 89.  The City of New York asserts that this position was not filled.  Terhune Decl. ¶ 61.  Idrees, however, asserts that the position was filled before it was even advertised and that Atiya Butler started the job on January 6, 2003.  Pl. Dep. 89.  Although Idrees does not know whether Butler's title was Deputy Chief of Management Services, "she was doing the same job which deputy chief was doing," Pl. Dep. 89, and "[s]he was sitting at the desk of the deputy chief doing the same work," Pl. Dep. 91.

In May 2003, the Parks Department posted the availability of the Chief of Administrative Services position.  Terhune Decl. ¶ 43.  Idrees applied for this position and was interviewed. Terhune Decl. ¶ 44; Pl. Dep. 86.  Idrees scored 2.93,[1] and his interviewers commented that his responses were "often evasive, abusive, or disconnected."  Terhune Decl. ¶¶ 54, 56.  One interviewer, Nancy Barthold, quoted Idrees as commenting that "you get promotions through connections" at his interview.  See Interview Matrix (annexed as Ex. AA to Barker Decl.); Terhune Decl. ¶ 55.  On August 8, 2003, Nancy Barthold sent Idrees a letter informing him that "[a]lthough you are not being offered the position at this time we appreciate your eagerness to advance in your career."  Pl. Dep. 82.  The position was given to Eileen Egan, Pl. Dep. 76; Terhune Decl. ¶ 51, who was a secretary with a high school degree, Pl. Dep. 77.  Idrees asserts that Egan received the position because she was a "young white lady" and was friends with

---

[1] This score is an average of the scores given by each of three interviewers.  Nancy Barthold was one of Idrees' interviewers for this position, and gave him a score of 2.7.  The other two interviews gave Idrees scores of 3.1 and 3.0.  See Interview Matrix (annexed as Ex. AA to Barker Decl.).

Nancy Barthold.  Pl. Dep. 87.  The city asserts that Egan had experience managing personnel,

payroll and benefits responsibilities, had "consecutive outstanding evaluation scores," and had

been Employee of the Month in 2001.  Terhune Decl. ¶ 51.  Egan scored 3.69 out of 5 at her

interview.  Id.

Idrees alleges that Barthold, who was supervising his work, insulted and humiliated him.

Pl. Dep. 103.  On May 15, 2003, Barthold yelled out a window at Idrees, who was wrapping

boxes of paper with plastic, that it was Idrees' job to bring these boxes of paper into the building

and not anyone else's.  Starr Decl. ¶¶ 2-5; Pl. Dep. 70, 80.  In June 2003, he was "not only

dragging the boxes into the building, but . . . distributing the boxes as well."  Pl. Dep. 80; Starr

Decl. ¶ 10.  Idrees alleges that Barthold treated him in this manner as retaliation for his filing a

complaint with the EEOC.  Pl. Dep. 103.  Though no one ever told Idrees they were aware that

he had filed a complaint, Pl. Dep. 105, he alleges that Barthold knew because, as "assistant

commissioner, she knows what's going on in the building," Pl. Dep. 105.

In July 2003, Jesse Brackenbury, a deputy chief in the Parks Department, told Idrees that

a summer intern would be checking his work.  Pl. Dep. 118.  Then, on September 25, 2003,

Barthold called Idrees into a meeting with Brackenbury regarding work that the intern had

checked, and Barthold raised her voice and "was very nasty."  Pl. Dep. 118.

On July 19, 2006, two years after this suit was filed, Idrees received an email from a

coworker, which he characterizes as saying "that Muslims are stupid and we'll kick their asses."

Pl. Dep. 107; see Email from Don Scoma to Mohammad Idrees (July 19, 2006, 11:23 a.m.), filed

Dec. 30, 2008 (Docket # 56) ("Scoma Email").  The email contains a photograph that purports to

depict a group of Syrian protesters carrying signs that read "we are idiots!," "bomb us next," and

"please kick our asses."  Scoma Email.  The email also comments that "[m]ost Syrians struggle

to even read Arabic, much less have a clue about English."  Id.  Scoma forwarded the email to

Idrees after receiving it from Jeff Broder, Idrees' former supervisor.  See Scoma Email; Pl. Dep.

108.  Idrees testified that he avoids Scoma because Scoma spent time in jail and talks about

fighting with knives and knowing how to kill a person.  Pl. Dep. 109.  Idrees never complained

to anyone at the Parks Department about this email or about its sender.  Pl. Dep. 108-09.

II.      LAW GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is

appropriate when "the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact

"may reasonably be resolved in favor of either party" and thus should be left to the finder of fact.

Anderson, 477 U.S. at 250.

When determining whether a genuine issue of material fact exists, courts must resolve all

ambiguities and draw all factual inferences in favor of the non-moving party.  Id. at 255 (citing

Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  Nevertheless, once the moving

party has shown that there is no genuine issue as to any material fact and that it is entitled to a

judgment as a matter of law, the non-moving party "must come forward with 'specific facts

showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may

not rely on conclusory allegations or unsubstantiated speculation."  Jeffreys v. City of New

York,  426 F.3d 549, 554 (2d Cir. 2005) (citation omitted). In other words, the non-movant must

offer "concrete evidence from which a reasonable juror could return a verdict in his favor."

Anderson, 477 U.S. at 256.  As noted previously, where "the nonmoving party bears the burden

of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing

sufficient to establish the existence of an element essential to [its] case."  Nebraska, 507 U.S. at

590 .  Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to

come forward with enough evidence to create a genuine factual issue to be tried with respect to

an element essential to its case."  Allen, 100 F.3d at 258.

Although the Second Circuit has noted that "an extra measure of caution" is needed in

granting summary judgment in discrimination cases since direct evidence of discriminatory

intent is rare, a finding of summary judgment is nonetheless appropriate for discrimination

claims lacking a genuine issue of material fact.  Schiano v. Quality Payroll Sys., Inc., 445 F.3d

597, 603 (2d Cir. 2006) (citation omitted); Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir.

2001) (citation omitted); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir.) ("It

is now beyond cavil that summary judgment may be appropriate even in the fact-intensive

context of discrimination cases."), cert. denied, 534 U.S. 993 (2001).

III.    DISCUSSION

A.    The Claims Properly Before this Court

1.    Claims Barred by the May 2005 Order

In his Amended Complaint, Idrees alleges that he was denied a number of promotions

between 1992 and 2002.  Am. Compl. 2-8.  Because he did not file a charge with the EEOC until

February 7, 2003, this Court ruled that he could not base his suit on any adverse employment

actions occurring prior to April 13, 2002, which is the date 300 days before the filing of his

EEOC charge.  See Report and Recommendation, filed May 3, 2005 (Docket # 13); Order, filed

May 26, 2005 (Docket # 14).  Thus, no claims based on events prior to April 13, 2002 will be

considered.

        2.     Exhaustion

       Both Title VII and the ADEA require an aggrieved employee to exhaust his

administrative remedies prior to bringing an action in federal court.  See 29 U.S.C. § 626(d);

42 U.S.C. § 2000e-5.  The exception to this rule is a limited one and has been summarized by the

Second Circuit as follows:

> Exhaustion is ordinarily "an essential element" of a Title VII claim.  Legnani v.
> Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001).  Claims
> not raised in an EEOC complaint, however, may be brought in federal court if
> they are "reasonably related" to the claim filed with the agency.  See Butts v. City
> of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993).
> This Circuit has recognized that "[a] claim is considered reasonably related if the
> conduct complained of would fall within the scope of the EEOC investigation
> which can reasonably be expected to grow out of the charge that was made."
> Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001) (internal quotation
> marks omitted).  In this inquiry, "the focus should be 'on the factual allegations
> made in the [EEOC] charge itself, describing the discriminatory conduct about
> which a plaintiff is grieving.'"  Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003)
> (quoting Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 637 (9th Cir.
> 2002)).  The central question is whether the complaint filed with the EEOC gave
> that agency "adequate notice to investigate discrimination on both bases."  Id. at
> 202.

Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006).  Two other types of claims

are also considered to fall under the "reasonably related" rubric: "(1) a claim alleging retaliation

by an employer against an employee for filing an EEOC charge, and (2) a claim where the

plaintiff alleges further incidents of discrimination carried out in precisely the same manner

alleged in the EEOC charge."  Id. at 70 n.1 (citation and internal quotation marks omitted).

       Here, Idrees' sole EEOC charge alleged that the City of New York denied him a number

13

of promotions on or prior to April 16, 2002.  See EEOC Charge.[2]  Yet, as noted, his Amended Complaint includes claims of discrimination after that date based on failure to promote and retaliation.

Under the law relating to exhaustion, each alleged failure to promote is treated as a discrete act of discrimination, Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002), which must be exhausted prior to the filing of a lawsuit in federal court, see, e.g., Pannikadavil v. N.Y. City Health & Hosps. Corp., 2008 WL 2876525, at *4 n.14 (S.D.N.Y. July 23, 2008); Ellis v. Long Island R.R., 2008 WL 838766, at *5 (E.D.N.Y. Mar. 31, 2008); Warner v. City of New York, 2007 WL 737477, at *5 (S.D.N.Y. Mar. 9, 2007); Gilford v. City of New York, 2004 WL 1574695, at *4 (S.D.N.Y. July 14, 2004), aff'd, 136 Fed. Appx. 390 (2d Cir. 2005).  Thus, to the extent that Idrees' Amended Complaint alleges failure to promote based on race, religion, national origin, and/or age with respect to events occurring after the date of the last incident complained of in the EEOC charge – an April 16, 2002 letter notifying him that he was not selected for the ASA job – he has not demonstrated how any of them are reasonably related to claims in his original EEOC charge.  Accordingly, they are unexhausted.

However, insofar as Idrees alleges failure to promote as retaliation for the filing of his EEOC charge, those claims need not be the subject of a separate EEOC charge.  See Williams, 458 F.3d at 70 n.1.

3.  Summary

In sum, the May 26, 2005 Order regarding statute of limitations bars any claims based on

---

[2]  In his memorandum, Idrees asserts that a later letter to the EEOC made mention of discrimination in 2003.  Pl. Mem. at 7-8.  Idrees cites only to the unsworn Amended Complaint for this argument and thus we do not consider it further.

adverse employment actions occurring prior to April 13, 2002. In addition, the exhaustion doctrine bars consideration of the adverse employment actions (other than retaliation) occurring after April 16, 2002. Accordingly, the only claims before the Court are (1) Idrees' claim that, by letter dated April 16, 2002, he was denied a promotion to the ASA position due to his race, religion, national origin, and age; (2) his hostile work environment claim, which was included in the 2003 EEOC charge; and (3) his retaliation claim. Each is discussed below.

      B.      Discrimination Claim as to the 2002 ASA Promotion

ADEA and Title VII claims are analyzed "under the same framework," Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (quoting Woroski v. Nashua Corp., 31 F.3d 105, 108 (2d Cir. 1994)); accord Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003); Aneja v. M.A. Angeliades, Inc., 2008 WL 918704, at *5 (S.D.N.Y. Mar. 31, 2008) (citing Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001)), which was established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. See 411 U.S. at 802; accord St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006) (citing James v. N.Y. Racing Ass'n, 233 F.3d 149, 153-54 (2d Cir. 2000)), cert. denied, 127 S. Ct. 1855 (2007). To establish a prima facie case of disparate treatment, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination. See Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (citing McDonnell Douglas, 411 U.S. at 802). The fourth element is a "flexible one that can be satisfied differently in differing factual scenarios."

15

Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996).

If the plaintiff establishes a prima facie case, a presumption of discrimination is created and the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the adverse employment action.  McDonnell Douglas, 411 U.S. at 802; St. Mary's, 509 U.S. at 506-07; Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-55 (1981); Leavitt, 465 F.3d at 90; Evans-Gadsen v. Bernstein Litowitz Berger & Grossman, LLP, 491 F. Supp. 2d 386, 395 (S.D.N.Y. 2007).  If the employer articulates such a reason for its action, the presumption of discrimination is eliminated, and "the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination."  James, 233 F.3d at 154 (citing cases).  Such evidence may include, for example, a showing that "'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'"  Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004) (quoting Burdine, 450 U.S. at 253).  Importantly, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  St. Mary's, 509 U.S. at 507 (quoting Burdine, 450 U.S. at 253) (alteration in original); accord Schnabel, 232 F.3d at 90.  Thus, it is not sufficient for the fact-finder to disbelieve the employer's explanation; rather, "'the fact-finder must believe the plaintiff's explanation of intentional discrimination.'"  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) (quoting St. Mary's, 509 U.S. at 519) (emphasis omitted).  In other words, the plaintiff "must always prove that the conduct at issue . . . actually constituted discrimination."  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (internal quotation marks, emphasis and bracketing omitted).

16

Nevertheless, while the plaintiff must prove that the defendant's proffered reasons for termination were pretextual, the plaintiff is not always required to "introduce additional, independent evidence of discrimination." Reeves, 530 U.S. at 149. "In appropriate circumstances," the evidence of pretext alone will be sufficient to "infer . . . that the employer is dissembling to cover up a discriminatory purpose." Id. at 147; see also Schnabel, 232 F.3d at 90 ("Reeves clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'") (quoting Reeves, 530 U.S. at 143).

Despite the elaborate process set up in McDonnell Douglas, Second Circuit case law makes clear that a court may simply assume that a plaintiff has established a prima facie case and skip to the final step in the McDonnell Douglas analysis, as long as the employer has articulated a legitimate nondiscriminatory reason for the adverse employment action. See, e.g., Graves v. Finch Pruyn & Co., 457 F.3d 181, 188 (2d Cir. 2006) (declining to resolve dispute regarding establishment of prima facie case of age discrimination on the ground that plaintiff had not "pointed to any record evidence to dispute [defendant's] legitimate reason (so far as the ADEA is concerned) for the alleged adverse employment action"); Roge, 257 F.3d at 168 (declining to decide whether prima facie case was made in ADEA case because the defendant "met its burden to put forth legitimate, nondiscriminatory reasons for [plaintiff's] termination, and [plaintiff] has failed as a matter of law to proffer evidence of pretext sufficient to go to a trier of fact"); accord Morris v. Ales Group USA, Inc., 2007 WL 1893729, at *7 (S.D.N.Y. June 29, 2007) ("Rather than apply the McDonnell Douglas test formalistically, the Court will assume that [plaintiff] has

17

made out a prima facie case of discrimination on this claim."); Mathews v. Huntington, 499 F. Supp. 2d 258, 264 (E.D.N.Y. 2007); Tomney v. Int'l Ctr. for the Disabled, 357 F. Supp. 2d 721, 742 (S.D.N.Y. 2005).

Here, the defendants have pointed to a legitimate non-discriminatory reason for their failure to promote Idrees in 2002 – specifically, that Idrees did not receive a recommendation from his supervisor and performed poorly at his interview, Def. Mem. at 27; Terhune Decl. ¶ 15, and that his "poor productivity, lack of supervisory skills and general inappropriate workplace behavior made him far less qualified than the candidates . . . selected," Def. Mem. at 25; Declaration of Mary F. Pazan (annexed as Ex. K to Barker Decl.), ¶¶ 7, 8, 10, 22.  Accordingly, we now consider only whether Idrees has marshaled evidence that would allow a reasonable juror to find that the denial of his application for a promotion was based on his membership in a protected class or that the stated reason for the denial was pretextual.

In this case, Idrees has pointed to no such evidence.  Viewing the admissible evidence in the light most favorable to Idrees, he has pointed only to evidence of occasional offensive statements by co-workers, and of a personality conflict with Mary Pazan.   As to the ASA position, Idrees' brief states without elaboration and without citation that he was "similarly situated" to other candidates who were promoted and that "the only reason he did not receive a recommendation by his supervisor is because Ms. Pazan prevented plaintiff's supervisor from giving him a recommendation."  Pl. Mem. at 13.  While a plaintiff can show discrimination if the "employer treated plaintiff less favorably than a similarly situated employee outside his protected group," the plaintiff must show that he is "similarly situated in all material respects to the individuals with whom []he seeks to compare [him]self."  Mandell v. County of Suffolk, 316

F.3d 368, 379 (2d Cir. 2003).  Idrees points to no admissible evidence that shows he was similarly situated in all material respects to the other individuals promoted.  Nor has he rebutted the detailed evidence provided by the defendant of the elaborate, and numerically based, process that was undertaken to compare the various candidates and rate them.  See Def. 56.1 ¶¶ 11-26. He has also not provided evidence that the decision-makers – specifically, Mary Pazan or any of the five people who interviewed him for the position – were influenced by his race, religion, national origin, or age.  Idrees argues that "it was inside management who had a personal agenda against plaintiff which prevented plaintiff from receiving a promotion."  Pl. Mem. at 16.  But even if this were true and the Court were to accept that Pazan disliked Idrees, treated him badly, and prevented him from being promoted due to some "personal agenda," this would not be sufficient to establish a claim of discrimination.  See Alfano v. Costello, 294 F.3d 365, 378 (2d Cir. 2002) (excluding from consideration all facially neutral incidents where plaintiff had failed to show  "some circumstantial or other basis for inferring that incidents . . . neutral on their face were in fact discriminatory"); Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic.") (citation omitted); Baur v. Rosenberg, Minc, Falkoff & Wolff, 2008 WL 5110976, at *5 (S.D.N.Y. Dec. 2, 2008) ("The ADEA is not violated simply because an employer misjudges the quality of its employee or an employee feels misunderstood.").  "Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude.  It is therefore important . . . to exclude from consideration personnel decisions that lack a

linkage or correlation to the claimed ground of discrimination.  Otherwise, the federal courts will become a court of personnel appeals."  <u>Alfano</u>, 294 F.3d at 377 (citing cases).  Here, there is simply no evidence that Pazan or any other decision-maker treated Idrees differently because of his race, religion, national origin, or age – or that their stated reason for not promoting him was pretextual.  Accordingly, Idrees' claim of discrimination must fail.[3]

C.      <u>Hostile Work Environment Claim</u>

A hostile work environment claim requires that the plaintiff show "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer."  <u>Alfano</u>, 294 F.3d at 373 (internal quotation marks omitted).  The plaintiff must demonstrate that, under the totality of the circumstances, "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [plaintiff's] employment were thereby altered."  <u>Id.</u>  Generally, the "incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'"  <u>Id.</u> at 374 (quoting <u>Perry v. Ethan Allen, Inc.</u>, 115 F.3d 143, 149 (2d Cir. 1997)).  In order to satisfy this standard, a plaintiff "'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [plaintiff's] working environment.'"  <u>Whidbee v. Garzarelli Food Specialties, Inc.</u>, 223 F.3d 62, 69 (2d Cir. 2000)

---

[3]  Notably, the lack of evidence of pretext or discriminatory intent holds true not only for the ASA promotion but for each of the subsequent promotions.  For none of these has Idrees provided evidence to show that the reasons given by the defendant for the denial of any promotions was based on discrimination or, for that matter, retaliation.  <u>See</u> Section III.D below.

(quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)).

In Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), the Supreme Court listed a number of factors that may be considered in determining whether a hostile work environment exists, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. "A work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it." Brennan v. Metro. Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999) (citing Gallagher v. Delaney, 139 F.3d 338, 347 (2d Cir. 1998)).

We need not address the appropriate time period for which evidence on hostile environment should be considered, as nothing Idrees has included in the record would allow a reasonable juror to find such an environment existed at any time. Idrees alleges that he was subjected to a hostile work environment because of Pazan's comment to "kick Mohammad's ass out," the 2001 incident in which Fox threatened him with a stapler while saying "you guys are nasty people," the requirement that Idrees move boxes of paper, the evaluation he received from Pazan in 2005 rating him as "good," and the 2006 Scoma Email that purported to depict Syrians in an adverse light. See Pl. Mem. at 17-18. As a preliminary matter, the Court notes that these incidents are facially neutral with the exception of the Fox comment and the Scoma Email (and even the Scoma Email does not expressly target any group of which Idrees is a member). While facially neutral incidents may be considered as a part of the totality of the circumstances in a hostile work environment claim, the plaintiff nevertheless bears the burden to show that those facially neutral incidents were in fact motivated by bias. See Alfano, 294 F.3d at 377-78; see

21

also Brown, 257 F.3d at 252.  Idrees has not done so here.

No reasonable juror could find that these incidents add up to the sort of "discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment."  Harris, 510 U.S. at 21.  While courts have held that "'[r]acially derogatory language in the workplace can be evidence of a discriminatory atmosphere, and is certainly not to be condoned,'" Lawson v. Getty Terminals Corp., 866 F. Supp. 793, 802 (S.D.N.Y. 1994) (quoting Powell v. Missouri State Highway & Transp. Dep't, 822 F.2d 798, 801 (8th Cir. 1987)), "[i]solated, minor acts or occasional episodes do not warrant relief," Brennan, 192 F.3d at 318 (citing Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62 (2d Cir. 1992)).  In order to establish a hostile work environment claim, "the plaintiff must show more than a few isolated incidents of racial enmity."  Williams, 171 F.3d at 100-01 (citations and internal quotation marks omitted).  Here, the only comments arguably relating to a protected characteristic are plainly minor and isolated.  The Fox comment was itself ambiguous and was limited to a single occasion.  The Scoma Email was sent by a co-worker, not a supervisor, and there is no indication that anyone else at Parks was even aware of it.  See Petrosino v. Bell Atlantic, 385 F.3d 210, 225 (2d Cir. 2004) ("Where an employee is the victim of . . . harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action.") (citations omitted).  As to the other aspects of Idrees' hostile environment claim, they are facially neutral and there is no reason to attribute any of them to Idrees' protected characteristics.  Thus, Idrees' evidence is insufficient to show that he was subjected to a hostile

22

work environment.  See Forsyth v. Fed'n Empl. & Guidance Serv., 409 F.3d 565, 573-74 (2d

Cir. 2005) ("On a motion for summary judgment in a discrimination case the plaintiff must

provide the trial court with more than his own conclusory allegations declaring discrimination

was present.") (citing cases); see also Deters v. Lafuente, 368 F.3d 185, 189 (2d Cir. 2004) (per

curiam) (plaintiff's allegations of a hostile environment insufficient where plaintiff alleged "a

string of isolated actions occurring over a multi-year period" that involved neither a "pattern of

nearly constant harassment" nor "any one incident that [was] particularly severe") (internal

quotation marks and citations omitted); Delgado v. P.R. Family Inst., Inc., 2001 WL 964000, at

*7 (S.D.N.Y. Aug. 23, 2001) ("As only one isolated and ambiguous comment could be

interpreted as reflecting a discriminatory intent, Plaintiff has not sufficiently supported her claim

that she was subject to a hostile environment permeated with discriminatory animus.") (citation

omitted).

        D.    Retaliation Claim

      Title VII provides that "[i]t shall be an unlawful employment practice for an employer to

discriminate against any of his employees . . . because he has made a charge, testified, assisted,

or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

42 U.S.C. § 2000e-3(a).  Under this statute, an employer may not retaliate against an employee

for complaining of employment discrimination prohibited by Title VII.  Kessler v. Westchester

County Dep't of Soc. Servs., 461 F.3d 199, 205 (2d Cir. 2006).  Retaliation claims under the

ADEA are analyzed by the same standards as those under Title VII.  Id.; Terry, 461 F.3d at 141;

see also 29 U.S.C. § 623(d).

      "To establish a prima facie case of retaliation a plaintiff must show (1) participation in a

protected activity that is known to the defendant, (2) an employment decision or action

disadvantaging the plaintiff, and (3) a causal connection between the protected activity and the

adverse decision." Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 443 (2d Cir.

1999) (citation omitted); accord Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007) (citing

Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004)).  Generally, a plaintiff may

demonstrate the last element either "(1) indirectly, by showing that the protected activity was

followed closely by discriminatory treatment, or through other circumstantial evidence such as

disparate treatment of fellow employees who engaged in similar conduct; (2) directly, through

evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. N.Y.

City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000) (citing Cosgrove v. Sears, Roebuck & Co.,

9 F.3d 1033, 1039 (2d Cir. 1993)).

 Once again, we will assume, arguendo, that Idrees has made out a prima facie case[4] and

consider instead whether the defendant has given a legitimate, nondiscriminatory reason for its

actions and whether Idrees has met his burden of showing discrimination.

 Idrees does not detail what actions he is complaining of.  Instead his brief makes

---

 [4]  Because knowledge of any employee is to be imputed to a corporate body for purposes
of making a prima facie case, see, e.g., Patane, 508 F.3d at 115, it would appear the "known to
the defendant" element has been met. The record contains a notice of the EEOC Charge sent to
the Parks Department, which was stamped "received" on February 26, 2003.  See EEOC Charge.

 The defendant argues that the "causal connection" requirement is not met due to the lack
of temporal proximity between the protected activity and the alleged retaliatory conduct.  Def.
Mem. at 42-43.  The earliest adverse employment action mentioned in the Amended Complaint
that occurred subsequent to the filing of the EEOC complaint on February 7, 2003 is the denial
of a promotion that occurred on June 17, 2003.  See Am. Compl. ¶ 11.  While some case law
would support the City's position that a period of this kind is insufficient, see, e.g., Lewis v.
Snow, 2003 WL 22077457, at *8 (S.D.N.Y. Sept. 8, 2003), this area of the law is sufficiently
underdeveloped that the Court believes it the better course to decide this case on other grounds.

reference to "several promotions after April 13, 2003 [sic]," citing only to the unsworn Amended

Complaint.  See Pl. Mem. at 4.  The defendant's submission points to evidence of legitimate,

nonretaliatory reasons for each of the various failures to promote listed in the Amended

Complaint subsequent to the EEOC charge.  In brief, Idrees was not promoted to the DCTL

position because his education was not in a relevant field, Def. 56.1 ¶ 48, and he received the

fourth lowest interview score out of 51 candidates, Def. 56.1 ¶ 49.  The candidates hired were

"far superior to plaintiff in education and in interview score."  Def. 56.1 ¶ 52.  Similarly, Idrees

was not offered the Chief of Administrative Services position because "he was far less qualified

. . . and did not perform as well as Ms. Egan at the interview."  Def. 56.1 ¶ 79.  Egan had

"consecutive outstanding evaluation scores" and had been named employee of the month in

2001.  Def. 56.1 ¶ 77.  While Egan "managed all personnel, payroll and benefits responsibilities

of her division," Def. 56.1 ¶ 76, Idrees had "never held a position dealing with payroll, employee

benefits, or union issues," Def. 56.1 ¶ 80.  Egan scored 3.69 out of 5 at her interview, Def. 56.1

¶ 77, whereas Idrees scored only 2.93 out of 5, having made an unprofessional comment, given

"evasive or disconnected" responses, and "demonstrated unacceptable levels of knowledge of the

position and of the agency itself," Def. 56.1 ¶¶ 81-82.  Idrees did not apply for the positions of

Budget Coordinator, given to John Discolo, Def. 56.1 ¶ 85, or Deputy Chief of Management

Services (which was never filled), Def. 56.1 ¶¶ 90-91.  The position of Deputy Agency Chief

Contracting Officer was not filled at all, but the duties of this position (without the title) were

assigned to Maurice Dobson, whose title permitted him to perform those responsibilities.  Def.

56.1 ¶¶ 98-99.

    Because defendants have given legitimate non-retaliatory reasons for Idrees' failure to be

25

promoted, it is Idrees' burden to "point to evidence that would be sufficient to permit a rational

factfinder to conclude that the employer's explanation is merely a pretext for impermissible

retaliation." Cifra v. G.E. Co., 252 F.3d 205, 216 (2d Cir. 2001). Plaintiff has pointed to no

evidence of at all of retaliatory animus. Nor has he pointed to any circumstantial evidence

showing that any of these failures to promote were based on his filing of the EEOC charge.[5] At

most, he makes conclusory statements regarding his own qualifications. The only promotion for

which he gives any detail is the Chief of Administrative Services position. See Pl. Mem. at 14-

15. His argument on this point either consists of his own weighing of particular elements of the

interview matrix form – or of making unsupported assertions regarding his own experience. Id.

at 15. As discussed in detail in a sworn declaration submitted by defendants, Idrees has not

shown he was similarly situated to Egan in terms of experience or in terms of many other criteria

used by the committee to evaluate and rate the candidates. See Terhune Decl. ¶¶ 51-56. The

evidence in the record is thus insufficient for a reasonable jury to conclude that retaliation was in

fact the motivation for the choice of Egan.

In sum, Idrees has pointed to no admissible evidence showing that he was similarly

situated to successful candidates for promotion in all material respects or that the stated reasons

for his not getting the promotions were pretextual. Because Idrees has not pointed to evidence

that would allow a reasonable juror to conclude that he was denied any promotions as a result of

---

[5] While it is not a dispositive point, there is no evidence that any decisionmaker even knew of the EEOC charge. Idrees infers the Parks Department's knowledge of his EEOC activity from "the fact that plaintiff did not receive poor evaluations until he brought the EEOC claim," Pl. Mem. at 19, but the only evidence in the record on this point – consisting only of Idrees' evaluations from 1987, 1988, 1989, 1992, 1996, 2001, and 2005, see Perf. Eval. – does not support this assertion. The 2005 evaluation (for which he was rated "Good") was conducted in June 2006, many years after his EEOC activity. The previous evaluation in the record, for 2001, rated Idrees "Good+." Id.

retaliation, his retaliation claim must be dismissed.

IV.   CONCLUSION

For the foregoing reasons, the motion for summary judgment (Docket ## 42, 46) should

be granted.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have ten (10) days from service of this Report and Recommendation to

serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any

responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon.

Lewis A. Kaplan, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any

request for an extension of time to file objections must be directed to Judge Kaplan. If a party

fails to file timely objections, that party will not be permitted to raise any objections to this

Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: January 21, 2009
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

27

retaliation, his retaliation claim must be dismissed.

IV.    CONCLUSION

For the foregoing reasons, the motion for summary judgment (Docket ## 42, 46) should

be granted.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have ten (10) days from service of this Report and Recommendation to

serve and file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any

responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon.

Lewis A. Kaplan, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any

request for an extension of time to file objections must be directed to Judge Kaplan.  If a party

fails to file timely objections, that party will not be permitted to raise any objections to this

Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: January 21, 2009
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

27